Parker C. J.
drew up the opinion of the Court. The answers of the respondents have raised a question as yet not decided, on the effect of an attachment by the trustee process, where the funds in the hands of the supposed trustee consist partly of goods, wares and merchandise, and partly of choses in action, or debts due to the principal debtor. And it is a question of considerable importance and great influence upon the mercantile concerns of the community, and especially upon the effect of assignments by insolvent debtors, which, for want of a regular system of bankruptcy established by law, have become the ordinary mode of adjustment between creditor and debtor. The decision will also have an important bearing upon the attachment law of this Commonwealth, which, notwithstanding its liability to abuse and the many practical mischiefs which it produces, has not ceased to be upheld by the legislature and the community. Between the two systems which alone are recognised by our laws, it is difficult to perceive any ground of preference which ought to affect any question relative to the validity or operation of either. The common right of attachment gives to any single creditor whose demand is sufficiently large, without regard to the origin of his debt, the privilege of seizing and appropriating to his sole use all the effects of the insolvent, leaving all other creditors entirely without remedy, and by the same process all the debts due to the insolvent, except those secured by negotiable paper, rr,ay be sequestered for the same purpose.
The obvious injustice of this system in its application to the mercantile class of the community, has given rise to the once *311 questionable but now well sanctioned practice of voluntary assignments, with a professed view to make a fair distribution of all the effects and credits of the insolvent among all his creditors in proportion to their several demands ; and had this been the true character of these assignments, there could be no reasonable complaint if they should have entirely superseded the system of attachment. But daily experience must have satisfied all, that this privilege is almost constantly abused, in the preference given to creditors who are in no respect more meritorious than those who are postponed. Besides which, it opens a door to fraudulent indulgences to debtors, which it is exceedingly difficult and often impossible to detect and expose.
It is a necessary consequence of the existing state of the law of creditor and.debtor, that this right of preference should exist; for until a lien is created by attachment, the debtor, however insolvent, has the sole right of disposing of his property for the payment or security of any bona fide debt, and even under the attachment law he can effect the same purpose by secret intimations to such of his creditors as he may feel disposed to prefer. We know of no way of effectually curing these evils but by a general bankrupt law, which it is in the power of Congress only to enact, or such an insolvent law as the legislature may constitutionally adopt.[1] We come to this question therefore without any bias towards one system or the other; and shall endeavour to decide it according to the true intent and meaning of the legislature, as expressed in the trustee law, and as drawn out and expounded by numerous judicial constructions of that law.
The subject of attachment or arrestment (to use an appropriate Scotch word) by this statute of 1794, c. 65, are “ goods, effects, or credits so intrusted or deposited (by the debtor) in the hands of others, that the same cannot be attached by the ordinary process of law.”
The words “ goods and effects ” require no-explanation, but the word “ credits ” is of ambiguous meaning and therefore requires exposition. It might mean debts due from the trustee *312 himself to the principal, or debts due from other pet sons, the evidence of which was deposited with or intrusted to the trustee. It has been determined to mean the former only, and this, because on examination of the several provisions of the law, it was manifest such was the intention of the legislature. On execution against the trustee, he pays over any money which he acknowledges to be due to the principal from himself, or he may expose such effects as he holds, that the same may be taken by the officer. Now choses in action cannot be taken and sold on execution, and therefore are not liable to attachment. This was determined distinctly in the case of Perry v. Coates & Tr. 9 Mass. R. 537, and before, in the case of Maine F. and M. Ins. Co. v. Weeks & Tr. 7 Mass. R. 438.[1]
Since these decisions there has been no attempt to charge a trustee on the ground only that he held bonds, notes, accounts or any other evidence intrusted to him of debts due to the principal.[2] The remedy for creditors in regard to such property, is to summon the debtors themselves, if the debts are not assigned, or the assignees after they have received the money, if the debts have been fraudulently assigned, or if the money is no longer wanted for the purposes of the assignment. It is very clear then, that where nothing is assigned but debts, the assignees cannot be charged as trustees until they have received something, and as their liability depends upon the state of things at the time the writ is served upon them, if they have not then received any thing, they must be discharged. They then owed the principal nothing, nor had they any goods, effects or credits of his, within the meaning of the law, in their hands. Thus if one creditor causes his writ to be served before any debt has been collected, and another afterwards, the latter will hold the proceeds ; as was decided in the case of Frothingham v. Hayley & Tr. 3 Mass. R. 68.
*313 It is equally clear, that in the present case, had the respondtnts disclosed only the goods and merchandise as in their hands by virtue of the assignment, they could not be charged as trustees, for by the same disclosure it appears, that the demands of creditors who had become parties to the assignment, would much more than absorb the whole value of these goods.
So that in either case, of the respondents’ having only the goods, or only the choses in action, they would be discharged of this process.
The plaintiff therefore rests his case upon the supposed right and duty of the Court so to mould this process as to oblige the assignees to pay the creditors, for whom they hold in trust, out of the proceeds of the debts assigned to them, so as to relieve the goods, which were in their hands under the assignment, from the trust, and thus subject them to this process , by analogy to the principle of marshalling assets, which is known and practised in courts of equity, and which has been applied by this Court in a case which from its nature seemed to require peculiarly the adoption of so reasonable a doctrine.
The case referred to is Hays et al. v. Jackson et al., whuh was a petition of the executors of Jackson for license to sell real estate to pay debts, under the statute authorizing that procedure. There being real estate specifically devised, a general devise of the residue to Mrs. Swan, and certain other real estate, which, being acquired after the making of the will, of course descended to the heirs general of the testator, the question was, which portion of the estate should be sold for the payment of the debts ; and the decree was founded upon the principle of marshalling the assets, as practised in the courts of chancery, consistently with the provisions of the will.
This was essentially a case of chancery jurisdiction, and partaking also of the nature of probate authority. It was not a suit at common law, but a proceeding on petition,, and it was®, perfectly competent to the Court to adopt the rules and principles of a court of equity in deciding it. The case therefore does not form an authoritative precedent for cases at common law, or for cases arising under other statutes which are not strictly analogous.
We do not mean to say, however, that originally, in carry *314 ing into effect by judicial process the trustee statute, the Court might not have availed themselves of well settled principles of equity, for this also is-a jurisdiction given by a particular statute, which in its objects and provisions is peculiar and not according to the course of the common law.
But we must now take the statute as it has been construed and expounded by numerous judicial decisions, and not engraft upon it any new powers which may be inconsistent with the system formed out of it, which is now known and acted upon in practice.
We are to consider what the law was supposed to be at the time when this process was commenced, and when the creditors executed the indenture, and not introduce a new principle which will materially affect the interests of the parties, unless it shall appear manifestly to belong to a fair construction of the statute, and is reconcilable with adjudications which have long been resorted to by the profession in practising upon it.
It has been perfectly well understood, that no one could be charged as trustee, because he held intrusted to him the evidence of a debt due to an insolvent debtor. If these respondents are charged, that principle will be virtually overturned. They would not be charged because they held goods, for those are protected by the assignment ; they would be charged because of the choses in action which were assigned to them.
But it is said this is not so ; they are charged because of the goods ; and although there was a lien upon the goods, yet that will be discharged before the final adjudication, and then the process operates directly upon them. But is not this misapprehending the effect of the assignment and depriving it of the efficacy intended ? By that instrument the goods are absolutely and indefeasibly transferred, and immediately on the execution of it, may be sold and the proceeds distributed among the creditors ; but if they are taken by the trustee process, they are to be held for an indefinite period, until the debts are all collected ; some of which may be due in other States, some disputed and in litigation ; so that the creditors who executed the indenture in the faith of a speedy payment of at least a portion of their debts, may be postponed to a far distant day ; for the trustee must hold the goods until they are called for on *315 execution, and that cannot be until all the debts, or at least enough to satisfy the signing creditors, have been collected. This would exceedingly derange the course of proceedings under assignments, and would frequently occasion loss as well as delay. It would no doubt have a tendency to discourage debtors from stopping in their downhill career, and induce them still longer to prosecute a losing business ; but whether that is desirable or not, it can be no motive for us to introduce a change into the law. The effects of the law of attachment and the law of assignment are now so well known, that the legislature alone is competent to authorize a change.
There would be also a difficulty in adopting this system of marshalling assets, arising from the constitution of this Court, and its want of power to execute the system justly and beneficially. There is no control over the assignees, so that they may be compelled in a reasonable time to collect the debts ; without which it cannot be ascertained whether they are to be charged as trustees or not. This argument is made light of by the counsel for the plaintiff, but it seems to us difficult to answer. Suppose the assignees, finding the purposes of the assignment are to be frustrated, should refuse to collect the debts ; how are they to be compelled ? There is no process by which the Court can do it. The assignor would not be likely to hasten them to do what will defeat the object of the assignment. The after-signing creditors will have no interest in the collection of funds in which they are not to share. Those creditors who signed before the attachment are interested in a speedy collection, because there are already funds enough to pay them, that are locked up until the whole are collected ; but they have no means of compulsion, unless by the slow process of an action against the assignee for delay or negligence, which will serve but little to expedite payment to them. The Court may and necessarily must continue the trustee process until the debts are collected, but th;s will be to the great inconvenience of these creditors, besides incurring probably great loss upon the goods, which are to be kept on hand all the time and until the conclusion of the process.
It was probably owing to these and other inconveniences, that the position now contended for has not been heretofore *316 advanced; and the tenor of the cases in our books, though there is no direct decision, having a strong bearing against it The case before cited of Maine F. and M. Ins. Co. v. Weeks & Tr. gave room for the doctrine, and yet it was not advanced or intimated by counsel or the Court. The person summoned as trustee of Weeks had goods and merchandise deposited with him as security for debt, and also a promissory note payable to Weeks, which was not necessary for the security of the creditor, the other fund being sufficient. It was held he was not trustee, because choses in action are not goods, effects or credits, within the meaning of the statute. It might have been urged in that, as well as in this case, that the creditor had two funds, and that he ought to be made to collect the note, and then he would be trustee for the goods ; but the thought occurred to no one.
The late case of Andrews v. Ludlow & Tr. was of a similar character. There were chattels in the hands of Chapman, the supposed trustee, and also claims and demands against persons who had the property of Ludlow in their hands. The Court discharged Chapman, because he had not actually received more than enough to satisfy the demands for which he held the property in trust, at the time of the service of the writ, though before the final answer there was a balance in his hands. There again, by delay until the demands were collected, the supposed trustee might have been chargeable, but no suggestion of the kind was made.[1]
This difficulty did not exist in the case of Hays v. Jackson, for the application was for the sale of land, and the Court having determined which portion of the "real estate should be sold, the decree operated upon that part immediately, and license being granted, the land was sold, and so the decree was executed.
Considering therefore the intent of the legislature as ex pressed in the terms of the trustee act, the decisions of the Court in regard to choses in action, and the long practice under the statute,'during which the principle now set up has not been advanced, we do not think ourselves authorized to adopt it.
*317 That out whole system in relation to insolvent debtors is bad and requires amendment, we certainly are not disposed to deny. That the attachment law, trustee process, and law of assignment, have been found liable to great abuse, in such manner as not to admit of correction by the judicial power, must be obvious to the whole profession, and to the public generally. We may therefore expect that a wise legislature, whose duty and inclination it ever will be to modify the laws and adapt ih x to the existing condition of the community, will ere long supply the proper remedy.

Trustees discharged.

 See St. 1838, c. 163.

 See Thompsons v. Brown, 17 Pick. 463; Morrill v Brown, 15 Pick. 173. Bank bills that belong specifically to the defendant, may be attached. Spencer v. Blaisdell, 4 N. Hamp. R. 198; Revised Stat. c. 97, § 21. Money in specie may be attached and taken on execution. Sheldon v. Root, 16 Pick. 567; Revised Stat. c. 97, § 20. See Conant v. Bicknell, 1 Chipman, 50; Bubois v. Bubois, 6 Cowen, 494.

s See Gore v. Clisby, post, 555; Morrill v Brown, 15 Pick. 173; RundleV V. Jordan, 3 Greenleaf, 47; Staples v. Staples, 4 Greenleaf, 532.

 See Tucker v. Clisby, 12 Pick. 22; Bissell v. Strong, 9 Pick. 569.